# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

ISTVAN FARKAS, on behalf
of himself and on behalf of all others
similarly situated,

      Plaintiff,                                Case No.:

v.

RYAN TRANSPORTATION, INC,
and QUALITY CARRIERS, INC,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff ISTVAN FARKAS ("Plaintiff"), on behalf of himself and those similarly situated, by and through his undersigned counsel, brings this action against Defendants, RYAN TRANSPORTATION, INC ("Defendant Ryan"), and QUALITY CARRIERS, INC ("Defendant QC"), (collectively as "Defendants"), and states in support thereof:

## JURISDICTION AND VENUE

1. This is an action for damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for failure to pay a minimum wage. This Complaint is filed as a collective action under 29 U.S.C. § 216(b).

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 201 et seq.

3. Venue is proper in the Middle District of Florida, because all of the events giving rise to these claims occurred in Marion County, Florida, which lies within the Middle District.

4. The Section One exemption of the Federal Arbitration Act applies here, making this Court and not arbitration proceedings the appropriate forum, because carriers—whether considered employees or independent contractors—in the truck driving industry work under "contracts of employment of . . . workers engaged in foreign or interstate commerce" and thus these matters are exempt from arbitration. *See* 9 U.S.C. § 1 and *New Prime, Inc. v. Oliveira*, 139 S.Ct. 532 (2019).

## SUPPORTING FACTS AND ALLEGATIONS

5. Defendant QC is a nation-wide family of companies that operate the largest bulk tank trucking fleet, including over 2,500 trucks and 6,400 trailers, in North America. Defendant QC has a network of more than 100 company-owned and affiliate terminals throughout the U.S., Canada, and Mexico.[1] Defendant QC operates independent trucking companies ("Affiliate Partners") throughout the nation under the auspices of Defendant QC. Each Affiliate Partner receives a fixed percentage of linehaul revenue collected.[2] Defendant Ryan operates under the auspices of Defendant QC as an Affiliate Partner. Individual drivers working for either an affiliate such as Defendant Ryan, or the second employer, Defendant QC are known as an Affiliate Company Driver ("Affiliate Driver").

---

[1] https://www.qualitycarriersinc.com/About-Quality-Carriers
[2] https://www.qualitycarriersinc.com/About-Quality-Carriers/Affiliate-Partners

6. Defendants are "joint-employers" under the FLSA by virtue of their rigorous control over all of its affiliate partners and individual employees. Further, work performed by Plaintiff and members of the Class for the primary employer, Defendant Ryan, simultaneously benefits a second employer, Defendant QC.

7. Defendant QC and Defendant Ryan entered into an affiliate agreement to provide assistance, guidance, and stability to each company and its drivers.[3] Collectively, Defendants exercise control over almost all aspects of an Affiliate Partner and Affiliate Driver, including, but not limited to, the job application process, job screening process, job qualification requirements, employment policies, access to affiliate terminals and locations, health and medical benefits, job-duties and workflow, orientation, and driver referral bonuses. Further, Defendants prepare the payroll, and distribute the payments of wages for Plaintiff and members of the Class.

8. Defendants advertise this joint operation to drivers in their recruitment materials. For example, they advertise together on the craiglist.com website[4]:

"Ryan Transportation is Seeking Owner Operators"

"Quality Carriers and our affiliate, Ryan Transportation, are one of America's most reliable tanker trucking companies, offering the best opportunities for Owner Operators to achieve the most out of their careers."

"Apply at WWW.WORK4QC.COM"

9. Defendants have grown and profited in part by classifying their carrier/ truck drivers as "independent contractors" to obtain a favorable legal and economic

---

[3] https://www.qualitycarriersinc.com/Drivers/Affiliate-Drivers
[4] https://chattanooga.craigslist.org/trp/d/chattanooga-ryan-transportation-is/6965095134.html

position despite the fact that they exercise a level of control over the carriers. The totality of the circumstances reveals as consistent with that of an employer/employee relationship under the law.

10. Defendants enforce policies that dictate the manner in which carriers work and penalizes carriers when they do not follow these policies. These policies include but are not limited to Defendants dictating the routes driven by Affiliate Drivers through text message from a central dispatch, which monitors those routes and gas usage through a Garman GPS system.

11. Defendants have the power to discipline and ultimately terminate carriers/truck drivers that fail to follow each Defendants protocols, including its protocols related to accidents and maintaining proper logbooks.

## PARTIES

12. Named Plaintiff is a resident of Marion County, Florida.

13. Defendant Ryan Transportation, Inc. is a Kentucky corporation with a principal business address of 3804 Bells Lane, Louisville, Kentucky 40211, and which conducts substantial business nationwide, including in Florida and in this District.[5]

14. Defendant Quality Carrier, Inc. is a Florida corporation with a principal business address of 1208 East Kennedy Boulevard, Suite 132, Tampa, Florida 33602.

## GENERAL ALLEGATIONS

15. Named Plaintiff has satisfied all conditions precedent, or they have been waived.

---

[5] https://www.ryantrans.com/page/about-us

16. Named Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

17. Named Plaintiff requests a jury trial for all issues so triable.

18. At all times material hereto, Named Plaintiff was employed by Defendants as a carrier/truck driver.

19. The putative class of similarly situated employees consists of all other carrier/truck drivers employed by Defendants within the last three years. These similarly situated persons will be referred to as "Members of the Class" or "the Class."

20. At all times material hereto, Named Plaintiff and Members of the Class were "engaged in the production of goods" for commerce within the meaning of Sections 6 and 7 of the FLSA, and as such were subject to the individual coverage of the FLSA.

21. At all times material hereto, Named Plaintiff and Members of the Class were "employees" of Defendants within the meaning of the FLSA.

22. At all times material hereto, Defendants were an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

23. Defendants continue to be an "employer" within the meaning of the FLSA.

24. At all times material hereto, Defendants were and continue to be an enterprise covered by the FLSA, as defined under 29 U.S.C. §§ 203(r) and 203(s).

25. At all times relevant to this action, Defendants engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(s).

26. At all times relevant to this action, the annual gross sales volume of each Defendant exceeded $500,000 per year.

27. Thus, Named Plaintiff and Members of the Class are "non-exempt employees" who are covered by the FLSA.

28. At all times material hereto, the work performed by Named Plaintiff and Members of the Class was directly essential to the business performed by Defendants.

## FACTS

29. Named Plaintiff began working for Defendants as a carrier/truck driver in July 2018, and he worked in this capacity until September 2018. At all times material hereto, Named Plaintiff was considered an Affiliate Driver for Defendants.

30. Named Plaintiff's job-duties were to pick up shipments of goods in one or more locations and drive them by truck to another location in the United States.

31. Defendants exercised employee-level of control over Plaintiff and Members of the Class procedures, actions and responsibilities, all the while improperly classifying them as independent contractors.

32. At all times material hereto, Named Plaintiff and Members of the Class worked hours at the direction of Defendants, and they were not paid at least the applicable minimum wage for all of the hours that they worked.

33. By failing to accurately record all of the hours worked by Named Plaintiff and Members of the Class, Defendants have failed to make, keep, and preserve records with respect to each of its employees in a manner sufficient to determine their wages, hours, and other conditions of employment, in violation of the FLSA. See 29 C.F.R. § 516.2.

34. Defendants' actions were willful, and showed reckless disregard for the provisions of the FLSA.

**COLLECTIVE ACTION ALLEGATIONS**

35. Named Plaintiff brings this case as an "opt-in" collective action on behalf of similarly situated employees of Defendants (the "Class") pursuant to 29 U.S.C. § 216(b). The Class is composed of carrier/truck drivers whom Defendants failed to compensate in accordance with the federal minimum wage for all hours worked in accordance with the FLSA.

36. Therefore, notice is properly sent to: "All carrier/truck drivers whom Defendants failed to compensate in accordance with federal minimum wage for all hours that they worked from 2016 to the present."

37. The total number and identities of the Class members may be determined from the records of Defendants, and the Class may easily and quickly be notified of the pendency of this action.

38. Named Plaintiff is similar to the Class because he and the Class have been unlawfully denied full payment of the applicable federal minimum wage as mandated by the FLSA.

39. Named Plaintiff's experience with Defendants' payroll practices is typical of the experiences of the Class.

40. Named Defendants' failure to pay all wages due at a rate that was at least equal to the applicable statutory minimum wage is common to the Class.

41. Named Defendants' practice of making unlawful deductions from wages in violation of the FLSA is common to the Class.

42. Overall, Named Plaintiff's experience as a carrier/truck driver who worked for Defendants is typical of the experience of the Class.

43. Specific job titles or job duties of the Class do not prevent collective treatment.

44. Although the issues of damages can be individual in character, there remains a common nucleus of operative facts concerning Defendants' liability under the FLSA in this case.

### COUNT I – FLSA MINIMUM WAGE VIOLATION

45. Named Plaintiff realleges and readopts the allegations of paragraphs 1 through 44 of this Complaint, as though fully set forth herein.

46. During the statutory period, Named Plaintiff and the Class worked for Defendants, and they were not paid the applicable federal minimum wage for the hours that they worked, as mandated by the FLSA.

47. Defendants failed to compensate Named Plaintiff and the Class at a rate that was at least equal to the applicable federal minimum wage.

48. The Members of the Class are similarly situated because they were all employed as carrier/truck drivers by Defendants, were compensated in the same manner, and were all subject to Defendants' common policy and practice of failing to pay its carrier/truck drivers at a rate that was at least equal to the applicable federal minimum wage, in accordance with the FLSA.

49. This reckless practice violates the provisions of the FLSA, specifically 29 U.S.C. § 206(a)(1)(C). As a result, Named Plaintiff and the Members of the Class who

have opted in to this action are each entitled to an amount equal to their unpaid minimum wages as liquidated damages.

50. All of Defendants' conduct, as alleged and described above, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

51. As a result of the foregoing, Named Plaintiff and the Class have suffered damages.

**WHEREFORE**, Named Plaintiff and all similarly situated employees who join this collective action demand:

(a) Designation of this action as a collective action on behalf of the Named Plaintiff and the prospective Class that he seeks to represent, in accordance with the FLSA;

(b) Prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA putative class, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

(c) Equitable tolling of the statute of limitations from the date of the filing of this complaint until the expiration of the deadline for filing consent to sue forms under 29 U.S.C. § 216(b);

(d) Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by this Court;

(e) Judgment against Defendants for an amount equal to the unpaid minimum wages of Plaintiffs and all opt-in Members of the Class;

(f) A declaratory judgment stating that the practices complained of herein are unlawful under the FLSA;

(g) Judgment against Defendants for an amount equal to the unpaid back wages of Named Plaintiff and opt-in Members of the Class at the applicable statutory minimum wage, as liquidated damages;

(h) Judgment against Defendants stating that its violations of the FLSA were willful;

(i) To the extent liquidated damages are not awarded, an award of prejudgment interest;

(j) All costs and attorney's fees incurred in prosecuting these claims; and

(k) For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Named Plaintiff demands trial by jury as to all issues so triable.

Dated this 18th day of September, 2019.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: 813-337-7992

        Main: 813-224-0431
        Facsimile: 813-229-8712
        Email: bhill@wfclaw.com
        Email: jcornell@wfclaw.com
        Email: rcooke@wfclaw.com
        **Attorney for Plaintiff**